076732.0110(207)     RMC:las     No. 397

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **PEKIN INSURANCE COMPANY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 17 C 7704 |
| | ) |
| **PARK WILLOW OF CLARENDON HILLS** | ) **Judge Charles R. Norgle** |
| **CONDOMINIUM ASSOCIATION,** an | ) |
| Illinois not-for-profit corporation, **VARD** | ) **Magistrate Judge Young B. Kim** |
| **REALTY, LLC,** an Illinois limited liability | ) |
| company, **VISWANADHA YALARAVARTHI,** | ) |
| **THOMAS PANTANO, STEVEN McDOWELL,** | ) |
| **OSAMA RAMSEY, TANJA SPERLICH-** | ) |
| **PAZOU, DARRELL TAYLOR, EDWARD** | ) |
| **DUNST, MICHAEL ROG, ANDREA** | ) |
| **McGREW, RICHARD CABRERA, LINDSEY** | ) |
| **CABRERA, MINDAUGAS ARBACIAUSKAS,** | ) |
| **LEONKAS MALUKAS, HENRIKA** | ) |
| **MALUKAITE, QIONG JUAN LI, DAVID** | ) |
| **McCAULEY, JOHN BACH, ZESEN ZHOU,** | ) |
| **RAJASHEKAR POTHUGANTI, MANJU** | ) |
| **POTHUGANTI, AUTO-OWNERS** | ) |
| **INSURANCE COMPANY, STATE FARM** | ) |
| **FIRE & CASUALTY COMPANY, ALLSTATE** | ) |
| **INDEMNITY COMPANY, HOMESITE** | ) |
| **INSURANCE COMPANY, MIDWEST** | ) |
| **FAMILY MUTUAL INSURANCE** | ) |
| **COMPANY,** and **ABILITY PLUMBING &** | ) |
| **SEWERAGE, INC.,** an Illinois corporation, | ) |
| | ) |
| Defendants. | ) |

## MOTION FOR ENTRY OF JUDGMENT

Now comes the Plaintiff, Pekin Insurance Company ("Pekin"), by its attorneys, Robert Marc Chemers and Paula K. Villela of Pretzel & Stouffer, Chartered, and hereby

moves this Honorable Court to enter judgment on Pekin's Complaint for Interpleader that it does not owe a duty to defend or indemnify Ability Plumbing & Sewerage, Inc. in connection with any future claims that may be brought by any person as a result of the fire of June 1, 2015. In support, Pekin respectfully states as follows:

**BACKGROUND**

Pekin issued its policy of insurance numbered CL0080108 to Ability Plumbing & Sewerage, Inc. ("Ability Plumbing") as the named insured which policy provided for Commercial General Liability Insurance on a primary basis with an effective policy period from September 21, 2014 to September 21, 2015 with liability limits of $1,000,000 each occurrence. Doc. 1, ¶ 33. The Pekin policy provides, in its Insuring Agreement, as follows:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**    **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage' to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)**    The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

        **(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of

> judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Pekin Complaint, Doc. 1-1, p. 7, Doc. 1, ¶34.

The Pekin policy provides in its Limits of Insurance provision, Section III of the policy, as follows:

> **SECTION III – LIMITS OF INSURANCE**
>
> **1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
>
>   **a.** Insureds;
>
>   **b.** Claims made or "suits" brought; or
>
>   **c.** Persons or organizations making claims or bringing "suits";
>
> **2.** The General Aggregate Limit is the most we will pay for the sum of:
>
>   **a.** Medical expenses under Coverage C;
>
>   **b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
>
>   **c.** Damages under Coverage **B**.
>
> **3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."
>
> \* \* \* \* \*

> **5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:
>
> **a.** Damages under Coverage **A**; and
>
> **b.** Medical expenses under Coverage **C**
>
> because of all "bodily injury" and "property damage" arising out of any one "occurrence".

Doc. 1-1, p. 15, Doc. 1, ¶35.

On June 1, 2015, the building at 501 Carlysle Drive in Clarendon Hills, Illinois, was a 2-story wood frame, multi-family condominium building consisting of 17 units. Doc. 1, ¶ 36. Pekin's insured, Ability Plumbing was hired to replace PVC pipe with 3-inch copper piping within the ceiling space of Unit 6. *Id.* While working in Unit 6, where soldering of a copper drain pipe was occurring with an open flame torch in order to "sweat" solder the 3-inch copper pipe, the flame allegedly came in contact with the insulation and allegedly caused a fire. Doc. 1, ¶ 37.

The known claimants and/or their insurers have presented claims against Ability Plumbing for the damages each allegedly sustained in the June 1, 2015 fire. Doc. 1, ¶ 41. The defendant insurers have paid their unit owners and/or tenant insureds for the damages sustained by them, after proof, in the June 1, 2015 fire. Doc. 1, ¶¶ 38-42.

The limit of liability under the policy Pekin issued to Ability Plumbing is $1,000,000, however, Pekin paid one claim for $13,072.61, hence the balance is $986,927.39. Doc. 1, ¶ 43. Pursuant to an Order of this Court, Pekin deposited the

remaining balance of $986,927.39, on behalf of Ability Plumbing into the Registry of the Court. Doc. 64.

Pekin entered into a Settlement Agreement and Release with all non-defaulted parties, which provides for the distribution of the interpleader fund in a manner approved by and agreed to by all non-defaulted parties.

## ARGUMENT

Pekin's interpleader action was filed for the express purpose of resolving the distribution of the policy limit balance of $986,927.39 of the CGL insurance policy issued to Ability Plumbing (Doc. 1). Pekin and the parties who answered Pekin's Complaint and participated in the settlement conferences with Magistrate Judge Kim have entered into a Settlement Agreement and Release pursuant to which those funds are to be distributed among those parties, each of which has agreed to release Pekin and Ability Plumbing of any liability for damages arising out of the fire of June 1, 2015.

Other defendants in this action, namely, Andrea McGrew, Michael Rog, Henrika Malukaite, David McCauley, John Bach and Ability Plumbing, have been defaulted. A separate motion for judgment has been filed against the defaulted parties.

Pekin no longer has a duty to defend Ability Plumbing for any future claim which may be brought for damages that resulted from the fire of June 1, 2015 as the distribution of the interpleader fund is an exhaustion of the limits.

Pekin now asks this Court to declare that the disbursement of the $986,927.39 in interpleader funds deposited in this Court's Registry – constitutes an exhaustion of the applicable limits of liability of the Pekin policy through a settlement resolving all of the

5

participating claimants' disputed interests to the fund – and that Pekin be absolved of any further duty to defend Ability Plumbing in light of the exhaustion of the Pekin policy's limit of liability.

The Pekin CGL policy issued to Ability Plumbing unambiguously provides that "[o]ur right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments *or settlements* \*\*\*" (emphasis added) (Doc. 1-1, p. 7; Doc. 1, ¶ 34). The unambiguous language of the Pekin policy makes clear that any applicable duty or obligation to defend its insured "ends" upon the exhaustion of the applicable limit of insurance by the payment of a "settlement"—*i.e.*, by this Court's final order disbursing the $986,927.39 interpleader fund after the interested participating claimants to the fund have elected to enter into an agreement to release Pekin and Ability Plumbing of liability in connection with the underlying fire occurrence.

Pekin did not seek to be discharged from its duty to defend Ability Plumbing in the underlying actions filed as a result of the fire of June 1, 2015 by simply depositing its policy limits with this Court and then asking for a declaration that it no longer had a duty to defend its insured. Instead, the pleadings and the Record in this case make clear Pekin filed its interpleader action in an attempt to protect both its insured and itself from the time and expense of having to defend multiple adverse claims against a single fund–*i.e.*, the policy limit of the Pekin policy issued to Ability Plumbing.

It has been recognized that an interpleader action properly serves as a catalyst for settlement discussions (see *General Accident Group v. Gagliardi*, 593 F.Supp. 1080, 1087 (D. Conn. 1984), *aff'd without op.* 767 F.2d 907 (2nd Cir. 1985); *Allstate Ins. Co. v.*

6

*Rizzi*, 625 N.E.2d 74, 78 (Ill. App. Ct. 1993)), a purpose this interpleader action specifically accomplished as the parties who participated in this action entered into an agreement as to how the funds are to be distributed in exchange for a release of liability. In other words, the policy limit at issue in this interpleader action was never intended to be deposited with this Court as some sort of down payment on Ability Plumbing's potential exposure for the claims.

While it is true that under Illinois law, insurers may not simply deposit funds into the Registry and then walk away from their duty to defend their insureds. Illinois courts do recognize that where an insurer has "exhausted" the indemnity limits of the policy at issue, the insurer has no further duty to defend their insured. See *Zurich Ins. Co. v. Raymark Industries, Inc.*, 514 N.E.2d 150, 163 (Ill. 1987) ("Where the insurer has exhausted its indemnity limits, however, the insurer *cannot* ultimately be obligated to indemnify the insured. Thus, the duty to defend is broader than the duty to indemnify only when the insurer has the potential obligation to indemnify. But when, as here, the insurer has no potential obligation to indemnify it has no duty to defend"). The question then becomes whether the complete disbursement of the $986,927.39 policy limit that Pekin deposited with this Court by order equates to "exhausting" the policy's limit of liability.

A similar situation was analyzed by a district court in Indiana interpreting Illinois law. *Carolina Cas. Ins. Co. v. Estate of Zinsmaster*, 2007 U.S. Dist. LEXIS 81291 (N.D. Ind. 2007). There, Carolina Casualty Insurance Company issued a combined single limit, $1 million liability policy to Net Trucking. *Id.* at * 6. On August 21, 2005, an employee

of Net Trucking was involved in an accident resulting in several claims for bodily injury and property damage, the total value of which exceeded $1 million. *Id*. Carolina Casualty filed a complaint for interpleader, unopposed, and deposited its liability limit into the registry of the court. *Id*. The parties subsequently reached a resolution to their entitlement to the interpleader fund following mediation, and the Court ordered the disbursement of the $1 million. *Id*.

Carolina Casualty then moved for summary judgment against all of the defendants, alleging that it was entitled to be discharged from any further obligation or liability under the insurance policy, including any further duty to defend its insured, Net Trucking and its employee. *Id*. at *7. The policy provided the insurer's duty to defend ended "when the Liability Coverage Limit of Insurance has been exhausted by payment of judgment or settlements." The district court recognized the only issue remaining in the interpleader action was whether Carolina Casualty's duty to defend had been terminated by the distribution of the $1 million that was tendered to the court. "In other words, did the distribution of the policy limits through the interpleader action satisfy the contract language requiring the exhaustion of the Liability Coverage Limits by 'payments of judgments or settlements." *Id.* at * 10.

In holding that the distribution of the funds did, in fact, satisfy the exhaustion clause and end Carolina Casualty's duty to defend, the Court distinguished the case from prior decisions where the Illinois Appellate Court declined to discharge an insurer's duty to defend merely because the insurer deposited its policy limits with the court. *Id*. at *14. The Court recognized that in *Douglas v. Allied Am. Ins.*, the Appellate Court held that the

8

terms "exhausted by payment" in a provision allowing an insurer to terminate its duty to defend upon exhaustion of the limit of liability meant only "payment" by "settlement or judgment wholly depleting the policy amount, not simply paying the policy limits to the court." *Id*. quoting *Douglas*, 312 Ill.App.3d 535, 727 N.E.2d 376, 381 (2000). Likewise, the Court noted that in *Am. Standard Ins. Co. v. Basbagill*, the Appellate Court held that tender of interpleader money to the trial court that met the policy limit was not sufficient to terminate the insurance company's duty to defend because the carrier's tender was conditional and did not require it to relinquish any claim to the interpleaded funds." *Id*. citing *Basbagill*, 333 Ill.App.3d 11, 775 N.E.2d 255, 260-61 (2002).

The Court noted Illinois in cases such as *Basbagill* and *Douglas,* the interpleader funds were simply tendered to the court by the insurer, which then walked away from its duty to defend before the interpleader funds were distributed by judgment or settlement. In the case before the District Court, by contrast, the interpleader funds were not simply tendered to the court, but, instead, "have been wholly depleted by the claimants' subsequent settlement and disbursement of the funds." *Id*. at *16. In the light of the fact that the interpleader funds had been completely disbursed among the various claimants, the Court held as instructed here:

> Carolina Casualty cannot be obligated to indemnify Net Trucking for claims made against it arising from the accident; the policy limits have already been exhausted. Moreover, its limits have been exhausted by payments that Carolina Casualty was legally obligated to pay through the Mediation Agreement (settlement) and the Court's order of disbursement—not by a unilateral tender of money that it may have never been obligated to pay or could later recoup if the claims against Net Trucking were less than $1 million.

*Zinsmaster*, 2007 U.S. Dist. LEXIS 81291 at *18.

9

While the Court acknowledged that the settlement and disbursement of the funds "did not resolve" any of the actual claims by the defendants against Net Trucking, but resolved only the disbursement of the available monies deposited with the Court, the Court held that "there is no suggestion in the language of the contract that all claims against Net Trucking had to be resolved, either through settlement or judgment, before Carolina Casualty would be absolved of its duty to defend. The contract only provides that its policy limits must first be exhausted by payment of settlements or judgments." *Id*. Under those circumstances, Carolina Casualty was entitled to judgment on its interpleader action that it owed no further duty to defend its insured. See also *Carolina Cas. Ins. Co. v. Estate of Studer*, 555 F. Supp. 2d 972 (S.D. Ind. 2008) (holding that under either Illinois or Indiana law, the fact that the policy limit had been "exhausted" by an insurer paying its limits and disclaiming any further interest in the funds meant that the insurer had no potential obligation to indemnify, which indicated the insurer should "also discharged from its duty to defend"). *Cf. American Serv. Ins. Co. v. China Ocean Shipping Co.*, 932 N.E.2d 8 (Ill.App.Ct. 2010) (in declining to follow *Studer*, the Appellate Court noted the act of depositing funds, even when the deposit is made with a full surrender and concession that the total value of the claims exceeds the deposited value, does not constitute a payment pursuant to a judgment or settlement. Moreover, the Court noted that unlike the insurer in *Studer*, the plaintiff did not provide its insureds with a defense while the interpleader action was pending).

Similar to *Zinsmaster*, and unlike the insurers involved in *Conway, Basbagill, Douglas*, and *China Ocean*, Pekin never claimed that the act of depositing $986,927.39 in

the Registry of this Court, and disclaiming any interest in how the funds are distributed, is itself sufficient to discharge Pekin of its duty to defend Ability Plumbing. Instead, Pekin deposited the funds and continued to defend Ability Plumbing in relation to the underlying actions during the pendency of the interpleader.

Pekin only now seeks a judgment that it no longer owes a duty to defend Ability Plumbing for any claims which may arise out of the underlying incident, after the distribution of the interpleader fund to the participating parties. As the Court held in *Zinsmaster*, such distribution "exhausts" the limits of the Pekin policy and "ends" Pekin's duty to defend Ability Plumbing. See *Zinmaster*, 2007 U.S. Dist. LEXIS at \*16-17.

Accordingly, it is clear that Pekin is now entitled to the entry of a judgment in its favor, holding that Pekin has no duty or obligation to defend Ability Plumbing upon the "exhaustion" of its policy's limit of liability upon this Court's final order disbursing the $986,927.39 in interpleader funds. See *Zinsmaster*, 2007 U.S. Dist. LEXIS 81291 at \*\*14-15.

## CONCLUSION

WHEREFORE, Plaintiff, Pekin Insurance Company, prays that this Court enters judgment that Pekin Insurance Company has no duty or obligation to provide a defense or indemnity to Ability Plumbing & Sewerage, Inc. for any and all claims for damages of any party in connection with the June 1, 2015 fire under its policy of insurance numbered CL0080108, due to the exhaustion through disbursement by this Court of the remaining $986,927.39 of the Limit of Liability.

Respectfully submitted:

/s/ Robert Marc Chemers
Robert Marc Chemers
Bar Number: 0431508
Paula K. Villela
Bar Number: 06298754
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive
Suite 2500
Chicago, IL 60606
Telephone: (312) 578-7548
Fax: (312) 346-8242
E-Mail: rchemers@pretzelstouffer.com